IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DEMETRIA CORONADO STEPHENS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NANCY A. BERRYHILL,[1] ) <br> Acting Commissioner of Social Security, ) <br> ) <br> Defendant. ) | 1:16CV1361 |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Demetria Stephens ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I. PROCEDURAL HISTORY

Plaintiff protectively filed her application for DIB on March 13, 2013, alleging a disability onset date of September 12, 2008. (Tr. at 11, 175-77.)[2] Her claim was denied initially (Tr. at 78-91, 110-14), and that determination was upheld on reconsideration (Tr. at 92-107,

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Administrative Record [Doc. #10].

116-23). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 124-25.) Plaintiff attended the subsequent hearing on March 19, 2015, along with her attorney and an impartial vocational expert. (Tr. at 11.) At the hearing, Plaintiff amended her alleged onset date to May 11, 2012, because Plaintiff had previously filed a Title II application that was denied on May 10, 2012, and was not appealed. (Tr. at 11, 66-73.) In addition, for purposes of Title II benefits, Plaintiff's Date Last Insured was December 31, 2013, and therefore the present claim ultimately involved a determination of whether Plaintiff was disabled during the period from May 11, 2012 through December 31, 2013. (Tr. at 11.) On May 15, 2015, the ALJ issued a decision concluding that Plaintiff was not disabled within the meaning of the Act during that time period (Tr. at 29), and, on September 24, 2016, the Appeals Council denied Plaintiff's request for review of that decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-5).

## II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets and quotation omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 11, 2012, her amended alleged onset date. Plaintiff therefore met her burden

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

at step one of the sequential evaluation process. (Tr. at 14.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> Degenerative Disc Disease (cervical and lumbar), Fractured Humerus, Osteoarthritis of both feet and right knee, Asthma, Obesity, Hypertension, Migraine Headaches, Chronic Pain Syndrome, Depression, and Anxiety.

(Tr. at 15.) The ALJ found at step three that none of these impairments, either individually or in combination, met or equaled a disability listing. (Tr. at 16-19.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform light work with myriad additional limitations:

> Specifically, the claimant can occasionally lift or carry twenty pounds, frequently lift or carry ten pounds, and stand or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. She has the unlimited ability to push and pull, other than as noted in her limitations to lifting and carrying. She can handle and finger, on a frequent basis, with both upper extremities. Additionally, she can occasionally engage in overhead reaching with her right upper extremity. She should avoid concentrated exposure to pulmonary irritants such as fumes, odors, dust, gasses and poor ventilation. She should also avoid hazards, such as machinery and heights. She can understand, remember and carry out simple routine, repetitive tasks, consistent with reasoning level 1 or 2 in the Dictionary of Occupational Titles (DOT). She can occasionally interact with the general public, co-workers and supervisors. However, she cannot engage in production pace work [or] work where there is more than occasional decision making or occasional changes to the work environment.

(Tr. at 19-20.) Based on this determination, the ALJ found at step four of the analysis that Plaintiff could not perform her past relevant work. (Tr. at 27.) However, the ALJ found at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, she could perform other jobs available in the national economy. (Tr. at 27-28.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 29.)

6

Plaintiff, citing the Fourth Circuit's decision in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), now challenges the ALJ's mental RFC assessment in two respects. First, she contends that the RFC fails to properly account for Plaintiff's moderate limitations in concentration, persistence, and pace. Second, she argues that the ALJ failed to assess Plaintiff's credibility before determining her RFC. After a thorough review of the record, the Court finds that neither of Plaintiff's contentions merit remand.

    A.    Concentration, persistence, or pace

At step three of the sequential analysis, the ALJ determined that Plaintiff has moderate limitations in concentration, persistence, and pace. In Mascio, the Fourth Circuit noted that where such limitations are reflected at step three, the ALJ should address those limitations in assessing the RFC or should explain why the limitations do not affect the claimant's ability to work. The Fourth Circuit specifically held that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." 780 F.3d at 638 (quotation omitted). This is because "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. The Fourth Circuit further noted that

> [p]erhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ here gave no explanation, a remand is in order.

Id. (internal citation omitted).

In the present case, as noted above, the ALJ found Plaintiff moderately limited in terms of concentration, persistence, or pace at step three of the sequential analysis. In doing so, the ALJ noted that:

> The claimant said that she can pay attention until she gets stressed out, that she does not finish what she starts and that she does not handle stress well. The claimant has reported that she tries to follow spoken instructions, but that she cannot follow written instructions. She reported somewhat inconsistently relative to her memory inasmuch as she first asserted that she does not need reminders to take medication or care for herself, but that she sometimes forgets that she has laundry in the washer/dryer. The claimant has reported that she cannot pay bills, handle a savings account or use a checkbook/money order. However, the record reveals that it is not because of her inability to mentally do these things, but rather because she lacks the financial resources to do these things. After consideration of the record and according the claimant the benefit of the doubt, the undersigned finds that she has demonstrated that she is moderately restricted in this area.

(Tr. at 18-19.) The ALJ also noted that the limitations identified in that discussion were not a residual functional capacity assessment, and in assessing Plaintiff's RFC, the ALJ then found that Plaintiff's impairments limited her to simple, routine, repetitive tasks, with further restrictions to occasional interactions with the general public, co-workers and supervisors, no production pace work, and no work where there is more than occasional decision making or occasional changes to the work environment. (Tr. at 19-20.)

Plaintiff now argues that the RFC restriction to simple, routine, repetitive tasks with no "production pace work" fails to adequately address her moderate limitations in concentration, persistence, or pace. In response, Defendant notes that other decisions in this District specifically addressed the issue of whether such restrictions adequately account for moderate limitations in concentration, persistence, or pace. See Grant v. Colvin, No. 1:15CV515, 2016 WL 4007606, at *6-9 (M.D.N.C. July 26, 2016); Bryan-Tharpe v. Colvin, No.

1:15CV00272, 2016 WL 4079532 at *7 (M.D.N.C. July 29, 2016). In Grant, the court undertook an in-depth analysis of the case law from other circuits underpinning the Fourth Circuit's decision in Mascio. After "review[ing] how those appellate courts (and district courts within those circuits) have ruled in cases involving a moderate limitation in CPP and a restriction to non-production work in the mental RFC," the court concluded that "the weight of authority in the circuits that rendered the rulings undergirding the Fourth Circuit's holding in Mascio supports the view that the non-production restriction . . . sufficiently accounts for [a claimant's] moderate limitation in CPP." Grant, at *7, *9.

Plaintiff nevertheless contends that this Court should instead conclude that the limitation to non-production work does not sufficiently address moderate limitations in concentration, persistence, and pace. However, the Court need not resolve that dispute here, because in the present case, the ALJ not only included the limitation to non-production work, but also specifically explained her decision in this case. As previously noted in other cases in this District, the Fourth Circuit's decision in Mascio

> "does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision. . . .
>
> An ALJ may account for a claimant's limitation with concentration, persistence, or pace by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court."

Tolbert v. Colvin, 1:15CV437, 2016 WL 6956629, at *8 (M.D.N.C. Nov. 28, 2016) (finding that RFC limitations to "simple, routine, repetitive tasks with simple, short instructions, in a job that required making only simple, work-related decisions, involved few workplace changes,

9

and required only frequent contact with supervisors, co-workers, or the public" sufficiently accounted for a Plaintiff's moderate limitations in concentration, persistence, or pace in light of the ALJ's explanation throughout the administrative decision) (quoting Jones v. Colvin, No. 7:14CV00273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015)).

In this case, as in Tolbert, the ALJ sufficiently explained why Plaintiff's limitations in concentration, persistence, or pace were accounted for by the RFC. First, the ALJ weighed the evidence and made specific findings regarding Plaintiff's abilities, and the ALJ then addressed Plaintiff's limitations and abilities by adopting an RFC that not only limited Plaintiff to simple, routine, repetitive tasks, but also precluded any production pace work, and then further limited her to only occasional decision-making, only occasional changes to the work environment, and only occasional interaction with the public, co-workers, and supervisors. Thus, the RFC includes multiple detailed provisions addressing the specific limitations found by the ALJ in the decision.

In addition, in formulating the RFC, the ALJ specifically discussed the medical evidence and Plaintiff's limitations and abilities and ultimately concluded that the "totality of her treatment records indicate that she retains functionality to understand, remember and carry out simple, routine, repetitive tasks in a job that does not require production pace, more than occasional changes in the work environment and more than occasional decision-making" and "[h]er moderate limitations in social functioning and concentration, pace, and persistence are adequately accommodated by the residual functional capacity." (Tr. at 24.) The ALJ also fully examined the specific records from Plaintiff's psychiatrist, including her Global Assessment of Functioning, and concluded that "[i]n view of the foregoing, . . . the claimant's depression

and anxiety are appropriately addressed in the residual functional capacity." (Tr. at 24.) Later in the decision, the ALJ discussed the consistency of these findings with the opinions of the State agency psychological consultants, Dr. Newman and Dr. Grover. (Tr. at 26.) In particular, the ALJ noted that Dr. Grover determined that Plaintiff was moderately limited in concentration, persistence, and pace, and that Dr. Grover "opined that although the claimant has a history of depression and anxiety that may cause work-related limitations, her limitations would not prevent completion of short, repetitive, routine tasks in a low-pressure setting." (Tr. at 26, 103-104.) Similarly, the ALJ found that Dr. Newman's opinion, along with the medical record as a whole, indicated that Plaintiff "is moderately limited in completing a normal workday [at] a consistent pace," but nevertheless retains the ability to follow short and simple instructions and make simple, work-related decisions. (Tr. at 26, 83.) Significantly, the ALJ concluded that Plaintiff's RFC "accommodates these limitations." (Tr. at 26.)[5]

Thus, the ALJ not only adequately accounted for Plaintiff's concentration, persistence, and pace limitations in the RFC itself, but also provided additional explanations and bases for doing so in her decision. This is sufficient to create the requisite "logical bridge," and in these

---

[5] Plaintiff contends that the opinions of Dr. Grover and Dr. Newman are internally inconsistent because the opinions do not reconcile the finding of "moderate limitations" with the finding that Plaintiff retains the ability to maintain attention and concentration at a job that involves simple, routine, repetitive tasks. However, other decisions in this District have rejected similar contentions. See, e.g., O'Brien v. Colvin, No. 1:15CV00536, 2016 WL 2755459 (M.D.N.C. May 11, 2016). Indeed, a "moderate" limitation is less than a "marked" or "extreme" limitation, and as noted in O'Brien, a "moderate" limitation "means only that the claimant's 'capacity to perform the activity is impaired,' and not that the claimant lacks the capacity." Id. at *8 (quoting POMS DI 24510.063B.2). In this case, general findings of moderate limitations were explained more specifically in narrative form, which does not render the opinions internally inconsistent. Thus, the ALJ properly relied on Dr. Newman's narrative statements that Plaintiff "is capable of carrying out short and simple instructions and has the ability to maintain attention and concentration for 2 hours at a time as required for the completion of simple tasks" and that she is "capable of adapting in a work setting with low stress" (Tr. at 87-88), as well as Dr. Grover's narrative statements that Plaintiff "[c]an understand and retain simple instructions" and "[c]an retain attention to complete a simple task," and "[w]hile impairment may cause work related limitation, it would not prevent [simple routine repetitive tasks] in a low pressure setting" (Tr. at 103-104).

11

circumstances, there is no basis for a remand pursuant to Mascio. See also Sizemore v. Berryhill, __ F. App'x __, 2017 WL 4675712, at *6 (4th Cir. Oct. 17, 2017) (rejecting the plaintiff's argument under Mascio where the ALJ relied on the opinion of the state agency psychologist that, notwithstanding moderate limitations in concentration, persistence, and pace, the plaintiff could sustain attention sufficiently to perform simple, routine, repetitive tasks in a low stress setting defined as non-production jobs without fast-paced work and with no public contact).

The Court notes that as part of the RFC argument, Plaintiff also contends that the ALJ's analysis is flawed because the ALJ failed to consider the combination of Plaintiff's pain with her depression and anxiety. However, the ALJ specifically found that:

> [t]he claimant's mental conditions are borne of and intensified by her physical impairments and financial conditions. As her pain increased and her activity levels decreased, the claimant's mental impairments became pronounced. However, during the period of adjudication, the claimant's impairments were treated by medication. Moreover, these impairments did not cause her to harm herself or others or produce any suicidal or homicidal ideations. . . . Beyond the conservative modality of medication treatment, the claimant has not required any psychiatric hospitalization.

(Tr. at 23-24.) In addition, the ALJ noted that she had "considered the claimant's chronic pain syndrome," (Tr. at 17) and the ALJ specifically considered Plaintiff's contention that "she suffers from depression and anxiety" and her contention that "because of her conditions she is in constant pain, does not socialize with others, and spends most of her day attempting to get comfortable." (Tr. at 20.) Thus, the ALJ explicitly, repeatedly noted the link between Plaintiff's pain and her mental impairments. The ALJ then found that "[i]mportantly, in this case, the claimant's mental impairment appears to be controlled with medication and pain-coping skills training." (Tr. at 24.) Thus, the ALJ specifically addressed the link between

12

Plaintiff's pain and her mental impairments and concluded that Plaintiff's mental impairments were controlled by her medications and by her pain coping skills training. The ALJ then concluded that "[i]n view of the foregoing, . . . claimant's depression and anxiety are appropriately addressed in the residual functional capacity." (Tr. at 24.)

In short, unlike in <u>Mascio</u>, the instant ALJ's discussion of, and reliance on, substantial record evidence adequately explains the extent to which Plaintiff's moderate limitation at step three translated into additional RFC restrictions, including her inability to perform production pace work. Accordingly, the Court finds no error.

B. Credibility

Plaintiff next contends that the ALJ erred by determining her RFC before assessing her credibility, as specifically prohibited in <u>Mascio</u>. 780 F.3d at 639. Notably, in that case, the ALJ applied boilerplate language which stated, in pertinent part, that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." <u>Id.</u> (citation omitted). Here, however, the ALJ found that Plaintiff's statements "are not entirely credible for the reasons explained in this decision." (Tr. at 21.) Unlike the language in <u>Mascio</u>, this language does not imply "that ability to work is determined first and is then used to determine the claimant's credibility." 780 F.3d at 639 (quotation omitted).

<u>Mascio</u> further explains that, even where an ALJ makes a "backwards" credibility determination, "[t]he ALJ's error would be harmless if he properly analyzed credibility elsewhere." <u>Id.</u> In that case, the ALJ simply failed to perform such an analysis. In contrast, the ALJ in the present case recounted Plaintiff's testimony and related her reasons for

discounting the severity and limiting effects of the alleged symptoms based on the record as a whole. (Tr. at 20-27.) Regarding Plaintiff's neck and back impairments, for example, the ALJ noted that the treatment records described these conditions as "mild" or "minimal," and that the "clinical and diagnostic findings do not support [Plaintiff's] allegations of severe pain." (Tr. at 21, 22, 525, 526, 533.) Plaintiff's EMG testing revealed no neuropathy or radiculopathy, and she exhibited normal muscle strength, bulk, tone, and reflexes throughout the period at issue. (Tr. at 22, 491, 570-75.) Moreover, although Plaintiff "stated dissatisfaction with the ineffectiveness of her steroid injections and pain medications, there is no indication in the record that any medical provider has concluded that [Plaintiff] required surgical intervention," and she "was dismissed from physical therapy after only a handful or sessions for non-compliance." (Tr. at 21, 306.) Accordingly, the ALJ concluded that Plaintiff's neck and back impairments "do not reach the level of severity discussed by [Plaintiff]." (Tr. at 22.)

Likewise, the ALJ found that osteoarthritis of the feet and knee was not as disabling as alleged in light of the objective findings, including a normal EMG study and x-rays. (Tr. at 23, 570-75, 720.)[6] While the studies of Plaintiff's feet revealed over-pronation, Plaintiff testified that shoe arches helped alleviate her symptoms. (Tr. at 23, 52.) The ALJ also noted that, while Plaintiff testified "that she does not really walk because she is scared of falling," she "later admitted that she could walk a block or two without rest." (Tr. at 20, 48-49.) Plaintiff "also stated that she will drop things when she experiences numbness or cramping in

---

[6] In April 2014, several months after Plaintiff's date last insured, the record reveals that she was diagnosed with a torn meniscus, and that surgical repair was recommended. (Tr. at 681, 805.) However, no evidence indicates that the tear predated Plaintiff's date last insured, and with respect to those records, the ALJ noted that "for purposes of Title II eligibility for benefits, the [ALJ] can only consider the claimant's severity of limitation prior to the date last insured." (Tr. at 15 n.3.)

her hands, but admitted that she can lift ten pounds." (Tr. at 20, 51-52.) The ALJ further acknowledged that Plaintiff fractured her humerus in January 2013, and noted that Plaintiff "has argued that she has continued to experience pain and discomfort," but that the record revealed "no further evidence of any reported pain or limited range of motion related to this injury after April 2013." (Tr. at 22.) The ALJ therefore found that this "lack of evidence tends to demonstrate that [Plaintiff] is not as limited as she asserts." (Tr. at 22.)

Finally, in terms of Plaintiff's mental impairments, the ALJ noted that "[d]espite the claimant's assertions that she does not socialize, the record indicates that she has and can maintain friendships. She has reported that she has friends who assist her with her pet and personal hygiene." (Tr. at 18.) In addition, "[s]he reported somewhat inconsistently relative to her memory inasmuch as she first asserted that she does not need reminders to take medication or care for herself, but that she sometimes forgets that she has laundry in the washer/dryer." (Tr. at 18.) The ALJ also noted that Plaintiff "contended that she has problems reading and comprehending" but "the claimant's medical records do not reflect any intellectual impairment." (Tr. at 24.) Ultimately, the ALJ concluded that the evidence in the record did not justify the disabling limitations that Plaintiff alleged in her testimony.

In conclusion, the ALJ found that "[a]lthough the claimant provided some inconsistent information, this may not be the result of a conscious intention to mislead. Nevertheless, the inconsistency may suggest that the information provided by the claimant generally may not be entirely reliable." (Tr. at 26). Thus, the ALJ reviewed the evidence in detail, assessed Plaintiff's credibility, and provided specific findings supporting the credibility determination. All of the discussion was included in the ALJ's analysis of the RFC, and there is no basis to conclude

15

that the ALJ got things "backwards" or failed to include sufficient explanation of the credibility determination. Thus, this challenge to the ALJ's determination also fails.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment on the Pleadings [Doc. #13] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #16] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 1st day of December, 2017.

/s/ Joi Elizabeth Peake
United States Magistrate Judge